IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAUL PEREZ, | § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:12-2586 |
| TRI-BULKSHIP S.A., *et al*, | § § § | |
| Defendants. | § § | |

## ORDER

Pending before the Court is Defendant Tri-Bulkship S.A.'s ("Tri-Bulkship" or "Defendant") Motion for Summary Judgment. **(Instrument No. 41).**

### I.

### A.

On August 28, 2012, Plaintiff Saul Perez ("Plaintiff" of "Perez") filed suit against the M/V BORONIA K ("Boronia"), Tri-Bulkship, and Onward Marine Service Co. Ltd ("Onward") under § 905(b) of the Longshore & Harbor Workers' Compensation Act (the "LHWCA"). (Instrument No. 1). Plaintiff filed an amended complaint on February 14, 2013. (Instrument No. 22). Plaintiff brings claims of negligence and gross negligence and alleges that he sustained injuries while working onboard the Boronia, which is owned and operated by Tri-Bulkship and Onward. *Id.* Plaintiff claims that, while exiting the cargo hold of the Boronia, he fell from a defective portable wooden ladder, sustaining serious and disabling injuries to his back, foot, and other parts of his body. (Instrument No. 22, at 4).

Defendant Tri-Bulkship filed a Motion for Summary Judgment on December 31, 2013. (Instrument No. 41). Plaintiff filed a response on January 21, 2014 (Instrument No. 42), Tri-

Bulkship filed a reply on March 14, 2014 (Instrument No. 43), and Plaintiff filed a surreply on March 24, 2014. (Instrument No. 44).

### B.

Plaintiff began working as a laborer in the Port of Houston in 2000. (Instrument No. 41-2, at 25). He first applied for work with AMI Staffing, Inc. ("AMI"), on May 17, 2010, worked for them as a laborer for roughly two weeks, and then was promoted to the position of walking foreman. (Instrument No. 41-3, at 8-11). AMI had a relationship with an entity identified as Ridgeway, wherein Ridgeway procured contracts for AMI to provide labor on job sites. (Instrument Nos. 41-3, at 7; 41-5, at 6). One of the companies for whom Perez worked on numerous occasions through these contracts, was Richardson Stevedoring and Logistics, Inc. ("Richardson Stevedoring"). *Id.*

Defendant Tri-Bulkship is the owner of the ship, the Boronia. (Instrument No. 41-7, at 5). On March 3, 2012, the Boronia anchored at the Greensport Terminal in Houston, Texas, carrying a cargo of steel coils that had been loaded some weeks prior in Australia. (Instrument Nos. 41-7, at 7; 42-1, at 7).

On March 4, 2012, Plaintiff was assigned as a walking foreman, overseeing a gang of workers, assigned to hatch number 4 (the "hatch") on the Boronia. (Instrument No. 41-3, at 21-24). Richardson Stevedoring was the stevedore for whom Plaintiff was working that day. (Instrument No. 41-3, at 9). The gang had been hired to unload the shipment of steel coils contained in the hatch. (Instrument No. 42-1, at 7). Plaintiff testified that he arrived at the Boronia at six in the morning, attended a safety meeting led by the stevedore superintendent, and then started working on the hatch at around 7:30. (Instrument No. 41-3, at 21-23, 35-36).

On the Boronia, the lower hold of the hatch is accessible by a system of fixed ladder sections. (Instrument No. 42-1, at 9). On the date in question, the lower portion of the fixed

ladder system was obstructed by the cargo of steel coils. (Instrument No. 42-1, at 8-9). Therefore, a wooden bridge had been installed allowing access from the fixed ladder to the top of the cargo. (Instrument No. 41-3, at 32-33). Two wooden ladders had also been secured, at either end of the cargo, leading roughly 8 or 9 feet down to the bottom of the stow. (Instrument Nos. 41-3, at 38-39, 61-62; 42-1, at 10). The ladders were made of two-by-four planks of wood, nailed together, and were strapped at the top to the steel coil cargo with green plastic straps. (Instrument No. 41-3, at 45-46).

Plaintiff has testified that immediately after finishing the safety meeting, he walked around the hatch to ensure there were no dangerous conditions. (Instrument No. 41-3, at 29-30). Plaintiff then led his gang into the hold. *Id.* Plaintiff went part of the way down the fixed ladder system and then crossed the temporary wooden bridge onto the top of the cargo. (Instrument No. 41-3, at 32-33). At that time, Plaintiff led two of the gang members down to the bottom of the hold via one of the temporary wooden ladders, while the other two gang members remained on top of the cargo. (Instrument No. 42-1, at 32-36). Plaintiff testified that he had never seen wooden ladders like these used in all of his years as a longshoreman, but that he descended the ladder, because they needed to remove some of the steel coils immediately. (Instrument No. 41-3, at 43-44). Plaintiff explained in his deposition that the steel coils had been loaded too closely together, and so to remove them safely, and to allow for easier removal of the remainder of the cargo, five of the coils needed to be discharged manually. (Instrument No. 41-3, at 28, 32-33). He and his gang then began discharging the coils. (Instrument No. 41-3, at 50-51). Plaintiff testified that he had to remove the wooden ladder that he had used to access the bottom of the hold in order to access these coils. (Instrument No. 41-3, at 54-55).

Plaintiff stated in his deposition that he had concerns about the safety of the wooden ladders. (Instrument Nos. 41-3, at 54; 41-4, at 24). Specifically, he noted that, even prior to

3

beginning to unload the coils, he had identified that the ladders did not provide an adequate, quick, and safe way out of the hold. (Instrument No. 41-3, at 57, 59, 61). Plaintiff's plan, therefore, was to unload five steel coils, and then stop working to report the potential problems with the ladders. (Instrument No. 41-3, at 56-57). When the gang finished removing the first five steel coils, Plaintiff began to exit the hold, via the second wooden ladder, in order to report the potential safety problems. (Instrument No. 41-3, at 61-62). Plaintiff noted that the two wooden ladders were largely the same, except that this ladder appeared slightly more secure, because it was tied to the steel coils on both sides, rather than simply one. (Instrument No. 41-4, at 1-2). Plaintiff claims that when he reached the top step of the ladder, and began to step onto the cargo, the top rung of the ladder broke in the middle and separated from the sides, causing him to fall to the bottom of the hold. (Instrument No. 41-4, at 2-3). Plaintiff claims that he landed on one foot on the floor of the hold, hit his back against the steel coils, and then struck his backside on the floor. *Id.* After Plaintiff fell, one of the gang members called Martin Partida, the superintendent for Richardson Stevedoring, and they used a crane to remove Plaintiff from the hold. *Id.* Plaintiff was then taken to the hospital by Ramon Resendez, the safety coordinator for Richardson. (Instrument No. 41-5, at 7, 19).

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322; *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).

The "movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*,

4

485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex*, 477 U.S. at 322-25). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

After the moving party has met its burden, in order to "avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The party opposing summary judgment cannot merely rely on the contentions contained in the pleadings. *Little*, 37 F.3d at 1075. Rather, the "party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim," *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 457, 458 (5th Cir. 1998); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Although the court draws all reasonable inferences in the light most favorable to the nonmoving party, *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008), the nonmovant's "burden will not

be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (*quoting Little*, 37 F.3d at 1075). Similarly, "unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. Am's Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997).

In deciding a summary judgment motion, the district court does not make credibility determinations or weigh evidence. *E.E.O.C. v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 612 n.3 (5th Cir. 2009). Nor does the court "sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *Ragas*, 136 F.3d at 458; *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988) (it is not necessary "that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"). Therefore, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

### III.

Plaintiff alleges that Defendants failed to discharge the duties prescribed by § 905(b) of the LHWCA. (Instrument No. 22, at 5). Specifically, Plaintiff claims that Defendants breached their turnover duty and duty to intervene.[1] (Instrument No. 42, at 4).

---

[1] Plaintiff also summarily mentions once in its response to Defendant's Motion for Summary Judgment that Defendant violated its active control duty, but fails to offer any explanation of how this duty applies, or otherwise address this claim. Therefore, the Court declines to address this duty.

Section 905(b) of the LHWCA permits a covered maritime worker to recover from a vessel owner for personal injury caused by the negligence of the vessel. 33 U.S.C. § 905(b). The scope of the vessel owner's duty under § 905(b) was outlined by the Supreme Court in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981); *see also Hill v. Texaco, Inc.*, 674 F.2d 447, 451 (5th Cir. 1982).

*Scindia*'s basic principle is that the primary responsibility for the safety of longshoremen rests with the stevedore. *Pimental v. LTD Canadian Pacific Bul*, 965 F.2d 13, 15 (5th Cir. 1992) (*citing Randolph v. Laeisz*, 896 F.2d 964, 970 (5th Cir. 1990). However, despite broad vessel immunity, a vessel may be liable:

1) if the vessel owner fails to warn on turning over the ship of hidden defects of which he should have known.
2) for injury caused by hazards under the control of the ship.
3) if the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge both of the hazard and that the stevedore, in the exercise of "obviously improvident" judgment, means to work on in the face of it and therefore cannot be relied on to remedy it.

*Id.* The above avenues for vessel liability under *Scindia* have been termed the turnover duty, the active control duty, and the duty to intervene, respectively. *Moore v. M/V ANGELA*, 353 F.3d 376, 380 (5th Cir. 2003). Only the turnover duty and the duty to intervene are at issue in this case. (Instrument No. 42, at 2).

### A.

The first avenue for liability described in *Scindia* is the turnover duty. Under the turnover duty doctrine, a vessel owner has two responsibilities: (1) a duty to exercise ordinary care under the circumstances to turn over the vessel and its equipment in such a condition that an expert stevedore can carry on stevedoring operations with reasonable safety; and (2) a duty to warn the stevedore of latent or hidden dangers which are known or should have been known to the vessel owner. *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 392 (5th Cir. 2008) (citing *Fed. Marine*

*Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 416-17 & n.18 (1969)). Most turnover duty cases concern the condition of the ship or of its equipment, but the duty to warn sometimes extends to certain latent hazards in the cargo stow. *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 99 (1994). Typically, neither of the two turnover duties applies to dangers or defects which are open and obvious. *Kirksey*, 535 F.3d at 395 (5th Cir. 2008). However, "if a longshoreman's only alternatives when facing an open and obvious hazard are unduly impracticable or time consuming, then the vessel owner may still be held liable." *Pimental v. LTD Can. Pac. Bulk Ship Servs.*, 965 F.2d 13, 16 (5th Cir. 1992) (citing *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 167 (5th Cir. 1990)). This "no alternative" exception only applies to defects associated with the ship's stow, as opposed to the ship's equipment, "where the shipowner controlled the manner and method of the stow and created the dangerous condition." *Kirksey*, 535 F.3d at 397. This is because the vessel exercises significantly less control over the cargo stow than it does over the ship's gear and equipment. *Clay v. Daiichi Shipping*, 74 F. Supp. 2d 665, 670 (E.D. La. 1999) citing *Howlett*, 512 U.S. at 104-05.

Plaintiff alleges that Defendant breached the turnover duty by failing to take note of or remove the defective portable wooden ladder and by failing to warn the stevedore of that latent defect. (Instrument Nos. 22, at 5-6; 42, at 3-4). Plaintiff does not address whether or not the dangerous nature of the wooden ladders was open and obvious. However, Plaintiff argues that the open and obvious exclusion does not apply because he had no alternative but to utilize the temporary wooden ladders, because that was the only means of accessing the permanent ladders to exit the hold. (Instrument No. 44, at 4-5).

Defendant argues that any defect with the portable ladders was open and obvious, as demonstrated by Plaintiff's testimony that he identified the hazard before he descended to the bottom of the hold and also prior to attempting to climb out. (Instrument No. 41, at 7, 10-12, 14).

8

Defendant also argues that, where an independent stevedore has been hired to load or discharge cargo, the Supreme Court's opinion in *Howlett* specifically limits a vessel's inspection duties with regard to dangerous conditions in the cargo as opposed to the ship's equipment. (Instrument No. 41, at 14). Defendant further argues that the "no alternative" exception does not apply in this case because Plaintiff has offered no competent summary judgment evidence that Defendant created the cargo stowage conditions. (Instrument No. 41, at 15).

Viewing all evidence in the light most favorable to Plaintiff, the Court finds that Defendant did not breach either of its turnover duties. The dangerous nature of the portable wooden ladders was open and obvious. Plaintiff's testimony is unclear about whether he doubted the safety of the ladders while standing on top of the cargo. (Instrument No. 41-3, at 49, 59, 61). However, Plaintiff noted repeatedly in his deposition that he was aware of the dangerous condition by the time he reached the floor of the hold and well before he attempted to climb out. (Instrument Nos. 41-3, at 57-58, 61; 41-4, at 24). He testified that he was in fact on his way to report his concerns regarding the safety of the ladders when he was injured. (Instrument No. 41-3, at 61-62). Furthermore, insofar as Plaintiff alleges additional dangers, such as the presence of wooden bridge on top of the cargo, or the manner in which the steel coils were stowed, he admits identifying those issues from the top of the cargo. (Instrument No. 41-4, at 45-47). Moreover, the "no alternative" exception does not apply to this case for two reasons. First, the alleged defect was related to ladders affixed to the cargo, not the ship's gear or equipment. In such cases, Plaintiff has the burden to show that Defendant "controlled the manner and method of the stow and created the dangerous condition." *See Kirksey*, 535 F.3d at 397. Plaintiff has offered no summary judgment evidence to support that finding. Rather, Plaintiff's expert report notes that representatives from both Richardson Stevedoring and the vessel deny installing these ladders. (Instrument No. 42-1, at 10). The expert report instead notes the likelihood that the ladders were

9

installed and secured by those who loaded the cargo in Australia. (Instrument No. 42-1, at 10). Second, Plaintiff has also failed to show that he had no alternative but to utilize the portable ladders. While there may have been some urgency to removing some of the coils, Plaintiff and others testified that he could have spoken with a supervisor to get more suitable ladders, and once in the hold, could have used a gang member's cell phone to call and make the same request. (Instrument Nos. 41-4, at 4-5, 12-15; 41-5, at 36-37, 52-53). Plaintiff even admitted that his decision not to get the aluminum ladders prior to trying to climbing out was a mistake. (Instrument No. 41-4, at 15). Plaintiff's only explanation for his failure to alert the superintendent about the ladders earlier was that he did not want to delay the removal of the coils. (Instrument No. 41-4, at 16). Therefore, Plaintiff has presented no evidence that Defendant breached either of its turnover duties.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claim arising under the turnover duty in Section 905(b) of the LHWCA is GRANTED.

### B.

The third avenue for liability described in *Scindia* is the duty to intervene. The duty to intervene has been characterized as a "narrow one." *Futo v. Lykes Bros. S.S. Co.*, 742 F.2d 209, 216 (5th Cir. 1984). "To establish a duty to intervene, the plaintiff must first show that the vessel owner was actually aware of the dangerous condition." *Fontenot v. McCall's Boat Rentals, Inc.*, 227 F. App'x 397, 404 (5th Cir. 1983). Proof of awareness of the dangerous condition is, however, insufficient without an additional showing by the plaintiff. *Futo*, 742 F.2d at 215. A vessel's duty to intervene arises only when the plaintiff shows

> not only that the shipowner had actual knowledge of the defect and of the stevedore's continuing use of the defective item, but also (1) it had actual knowledge that the defect posed an unreasonable risk of harm and (2) actual knowledge that it could not rely on the stevedore to protect its employees and that if unremedied the condition posed a substantial risk of injury.

10

*Greenwood v. Societe Grancaise De*, 111 F.3d 1239, 1248 (5th Cir. 1997). Where the hazard is created by an independent contractor, the Court determines whether there is a duty to intervene by looking at, among other factors: whether the hazard was open and obvious, where it was located, which party was better positioned to correct the hazard, and which party owned and controlled the defective item. *Prestenbach v. Chlos Challenge Shipping & Trading, S.A.*, 153 F. App'x 921, 923 (5th Cir. 2005).

Plaintiff alleges that the vessel owner either knew of the dangerous conditions in the hold, or had such knowledge imputed onto itself by the agent that constructed the ladders. (Instrument No. 42, at 17-18).

Plaintiff offers no competent summary judgment evidence demonstrating that Defendant had actual knowledge of the dangerous condition in question. Plaintiff offers testimony from the ship's captain, wherein he states that it was his duty to remove such dangerous conditions before the longshoremen boarded the ship. (Instrument No. 42-2, at 5-6, 7). However, the captain explicitly denied knowledge of the ladders in question. (Instrument No. 42-2, at 7). Plaintiff has offered no evidence as to who placed the ladders in the hold, or whether Defendant had actual knowledge of the ladders. Therefore, Plaintiff cannot meet the threshold question required to demonstrate a duty to intervene.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claim arising under the duty to intervene in Section 905(b) of the LHWCA is GRANTED.

### IV.

In his amended complaint, Plaintiff also asserts numerous theories of negligence and gross negligence against Defendants, outside of those specifically provided for in § 905(b) of the LHWCA. Defendant argues in its Motion for Summary Judgment that the gross negligence claims are not available as a matter of law. (Instrument No. 41, at 2). Plaintiff has offered no

argument in its responsive motions on any theory of negligence outside of the § 905(b) duties discussed above, and Defendant asserts that Plaintiff has conceded that Defendant's legal duties include only those provided for in § 905(b). (Instrument No. 43, at 2). Defendant is correct that § 905(b) of the LHWCA provides the exclusive remedies for injured maritime workers against a vessel. *See* 33 U.S.C. § 905(b), *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 289-90 (5th Cir. 2008). Therefore, Plaintiff cannot maintain any negligence or gross negligence causes of action predicated on duties other than those discussed in *Scindia*.

Accordingly, Defendant's Motion for Summary Judgment on any claims by Plaintiff not asserted pursuant to Section 905(b) of the LHWCA is GRANTED.

## V.

Based on the foregoing, IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment is **GRANTED. (Instrument No. 41).**

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the ___ day of March, 2014, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**